# IN THE COURT OF APPEALS OF IOWA

No. 21-1972
Filed March 30, 2022

**IN THE INTEREST OF A.A., C.W. and M.W.,**
**Minor Children,**

**S.P., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Warren County, Brendan Greiner, District Associate Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

Gina E.V. Burress of Carr Law Firm, P.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Yvonne C. Naanep, Des Moines, attorney and guardian ad litem for minor children.

Considered by May, P.J., and Schumacher and Badding, JJ.

**BADDING, Judge.**

A mother who candidly acknowledged that she would need another month before her three young children, born in 2016, 2017, and 2020, could be returned to her care appeals the termination of her parental rights under Iowa Code section 232.116(1)(f) (2021).[1]  In an argument elevating form over substance, the mother claims she was "denied due process of law when the [juvenile] court found a basis for termination which was not asserted in the State's petition" for the younger two children.  She also challenges the substance of the court's ruling, attacking each of the three steps in our de novo review of termination proceedings. *See In re L.B.*, ___ N.W.2d ___, ___, 2022 WL 495312, at *1–2 (Iowa 2022).  Alternatively, the mother claims that she should have been given more time to reunify with her children or that a guardianship should have been established.

## I.      Background Facts and Proceedings

The mother's youngest child tested positive for marijuana at birth, prompting a report to the Iowa Department of Human Services.  Voluntary services were initiated in June 2020, and the children were allowed to remain in their parents' care.  But in September, concerns arose about methamphetamine use by the mother and the father of the two younger children.  Each denied use, but both tested positive for methamphetamine.  When confronted with the positive test, the mother admitted that she "relapsed one time . . . when she had to clean her apartment" for the department.  In October, the State sought and obtained an order

---

[1] The oldest child's father did not participate in the proceedings, his rights were terminated, and he did not appeal.  The father of the younger two children filed a notice of appeal following the termination of his parental rights, but his appeal was dismissed by the supreme court for failure to comply with appellate rules.

for temporary removal, and the children were placed in the legal custody of the maternal grandparents under department supervision. The children were subsequently adjudicated as in need of assistance.

The mother was quick to obtain substance-abuse and mental-health evaluations in early November. But she was slow to respond to requests for drug screens over the next few months. When she did submit to testing, she was usually positive for marijuana. One of her tests in February 2021 "came back with a [THC] level of 700." Her substance-abuse counselor noted, "Typical resu[l]ts are between 100 and 200 for active users. This is extraordinarily high." The mother told the counselor conducting her substance-abuse evaluation about a long history of substance abuse:

> [The mother] identifies marijuana as her primary drug of choice with the first age of use being 19 and last date of use was 11/19/2020. She reports smoking three times weekly, approximately one gram consumed on each date of use. [The mother] reports that this use pattern was consistent throughout her pregnancy. . . . [She] identifies methamphetamine as her secondary drug of choice with the first age of use being 19 and the last date of use was in September 2020. She reports smoking or snorting up to four times daily but has difficulty quantifying her use. She states that "we were using a lot. I don't even know how much."

During an updated evaluation conducted in mid-February, the mother openly stated: "If wax or weed is available, I will use it. I just used today." This evaluation recommended that the mother pursue inpatient treatment due to her inability to stop using marijuana. The mother began participating in recovery court but then decided to discontinue the program. Then, in mid-March, the mother tested positive for methamphetamine, amphetamines, and marijuana. She admitted to using marijuana but denied any other drug use. The mother was

admitted into inpatient substance-abuse treatment in late March but was asked to leave the same day and unsuccessfully discharged a few days later after declining an opportunity to return to the program.

In its April permanency order, the juvenile court granted the mother a six-month extension of time so that she could complete inpatient treatment and demonstrate the ability to provide a safe and stable home for the children. Shortly after that order, the mother entered a four-week substance-abuse program. She was successfully discharged from the program in mid-May and began participating in after-care services. Unfortunately, her participation was sporadic and short-lived. In August, a department worker testified the mother showed signs of being under the influence of methamphetamine—appearing tired with droopy eyes, "very twitchy," and "very defensive." Around the same time, her counselor became concerned the mother "may be using again." By October, the mother had not meaningfully participated in treatment in several months. She had also stopped responding to the department's requests for drug tests. As a result, the State filed petitions for termination of the mother's parental rights, alleging termination was appropriate under Iowa Code section 232.116(1)(d) and (*l*) as to all children, (f) as to the oldest child, and (h) as to the younger two children.

A termination hearing was held in November. When asked how long she needed before the children could return to her care, the mother answered: "A month." In response, the State asked, "What's going to change in a month?" The mother answered, "I'll give you guys clean drug tests." In its termination ruling, the juvenile court found that while the mother could maintain short periods of sobriety, she could not demonstrate long-term sobriety. As a result, the court concluded the

children could not be returned to the mother's care and terminated her parental rights to all three children under section 232.116(1)(f). This appeal followed.

**II. Analysis**

As alluded to at the beginning of this opinion, we apply a three-step analysis in conducting our de novo review of termination of parental rights. *L.B.,* ___ N.W.2d at ___, 2022 WL 495312, at *2. We ask whether (1) a statutory ground for termination is satisfied, (2) the children's best interests are served by termination, and (3) a statutory exception applies and should be exercised to preclude termination. *Id.*; *see* Iowa Code § 232.116(1)–(3).

**A. Grounds for Termination**

We begin with the mother's due process argument, which stems from the juvenile court citing Iowa Code section 232.116(1)(f) in terminating the mother's rights to the younger two children. The mother argues this provision does not apply to the younger two children due to their age and asserts terminating her rights under that section violated her due process right to notice because it was not alleged in the petitions for those two children. The State responds that the petitions properly sought termination as to the younger two children under section 232.116(1)(h),[2] the court separately analyzed the groupings of children, and the

---

[2] We have explained the differences between section 232.116(1)(f) and (h) as follows:

> The differences between sections 232.116(1)(f) and 232.116(1)(h) involve the ages of the children at issue and the length of the period of removal. In pertinent part, section 232.116(1)(f) applies to children four years of age or older with a period of removal of twelve of the last eighteen months or the last twelve months, and section 232.116(1)(h) applies to children three years of age or younger with a period of removal of six of the last twelve months or the last six months.

citation to section 232.116(1)(f) in the court's ruling was a typographical error. We agree.

For starters, it is true that paragraph (f) does not apply to the two younger children, given their ages. But the State's petitions put the mother on notice that termination under paragraph (h) was in play, and "we must 'affirm an appeal where any proper basis appears for a trial court's ruling, even though it is not one upon which the court based its holding.'" *M.B.*, 2020 WL 569649, at *2 (quoting *In re M.W.*, 876 N.W.2d 212, 221 (Iowa 2016)). The erroneous reference to paragraph (f), a presumed typographical error, therefore "has no legal significance." *Id.*; *cf. In re H.C.*, No. 16-1961, 2017 WL 512798, at *2 (Iowa Ct. App. Feb. 8, 2017) ("[W]e decline to place form over substance and waste judicial resources on what was clearly a clerical error.").

We turn to the mother's argument that the State failed to prove the children[3] could not be returned to her care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4), (h)(4); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). The mother claims she "has shown a consistent desire to change," highlighting her engagement in treatment and therapy, attendance at visits, and her employment and financial stability. But a consistent *desire* to

---

*In re M.B.*, No. 19-1884, 2020 WL 569649, at *2 (Iowa Ct. App. Feb. 5, 2020) (footnotes omitted), *further review denied* (Feb. 26, 2020).

[3] While the mother only mounts this argument as it relates to the oldest child, that limitation appears to hinge on her assumption that she would be granted relief on her claim that the court improperly terminated her rights as to the younger children under the wrong provision. Having rejected that claim, we choose to address whether all three children could be returned to the mother's care.

change is not enough for these young children, who need their parent to *actually* change so that they can have safe and stable lives.

While the mother participated in treatment early on in the case, her participation was essentially non-existent in the months leading up to the termination hearing. What is even more troubling is the fact that the mother continued to use drugs throughout the proceedings and while in treatment. That just goes to show treatment has not been beneficial to the mother. And while the mother wanted the children returned to her care, she agreed that she would need more time to prove herself worthy. This amounts to clear and convincing evidence that the children could not be returned to her care at the time of the termination hearing. So we find the evidence sufficient to support termination under section 232.116(1)(f) and (h).

### B.     Best Interests and Statutory Exception

The mother argues termination is not in the children's best interests, *see* Iowa Code § 232.116(2), due to the closeness of the parent-child bonds and detriment resulting from severance. *See id.* § 232.116(3)(c). We choose to separately address the often-conflated best-interests and statutory-exception arguments. *See In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2019) (discussing three-step termination framework).

### 1.     Best Interests

In determining whether termination is in the best interests of children, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code

§ 232.116(2). The defining elements of a child's best interests are safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

The children have been removed from parental care for more than a year. The mother did go through the motions for a period of time, leading to some occasional bright spots in the case. But those bright spots were overshadowed by her continued drug use. And in the months leading up to termination, she stopped even trying to go through the motions, ending her participation in treatment and refusing to provide drug screens. While she now, on the eve of termination, wants to make the changes she was directed to make throughout the proceedings, waiting that long is too late. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). "[W]e cannot deprive a child of permanency after the State has proved a ground for termination" by hoping the parent will rectify the situation sometime in the future. *See In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010)). The mother has been unable to minister to the children's safety, nurturing and growth, and needs, all of which are now being met by their maternal grandparents. *See* Iowa Code § 232.116(2). We agree with the juvenile court that the children's best interests are best served by termination.

### 2. Statutory Exception

The mother argues termination of her rights would be detrimental to the children based on the closeness of the parent-child bonds. *See* Iowa Code § 232.116(3)(c). We first note the application of a statutory exception to termination, if such grounds exist, is "permissive, not mandatory." *M.W.*, 876 N.W.2d at 225 (quoting *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014)). While we acknowledge a bond between the mother and children, we conclude she failed to

meet her burden to show "that the termination would be detrimental to the child[ren] . . . due to the closeness of the parent-child relationship," especially given the children's young ages. Iowa Code § 232.116(3)(c); *see also A.S.*, 906 N.W.2d at 476 ("[T]he parent resisting termination bears the burden to establish an exception to termination . . . ."). The mother presented no evidence the children would suffer physically, mentally, or emotionally if her rights were terminated. As such, we conclude this exception to termination is not applicable.

### C. Additional Time

The mother argues "[she] would have been able to correct the situation and resume care of the children" had she been "given the benefit of additional time to continue working toward reunification." Iowa Code sections 232.117(5) and 232.104(2)(b) allow the juvenile court to grant additional time if parental rights are not terminated after the termination hearing. To do so, however, the court must find "the need for removal . . . will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

The only change the mother testified would occur if given more time was that she would be able to provide clean drug tests. *See id.* (requiring the enumeration of "the specific factors, conditions, or expected behavioral changes" showing the need for removal will no longer exist at the end of the period). But the mother couldn't accomplish that in the more than twelve months since her children were removed from her care, providing only one negative test result that entire time. *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain

sobriety, there is little hope of success in parenting."). Given her track record, we cannot agree that giving her additional time would lead to a different result. *See id.* ("[A] good prediction of the future conduct of a parent is to look at the past conduct.").

### D. Guardianship

Lastly, the mother suggests "the court should have directed [the department] to explore guardianship with the maternal grandparents." *See* Iowa Code § 232.117(5) (authorizing the court, following a termination hearing, to enter an order in accordance with section 232.104 in lieu of terminating parental rights); *see also id.* § 232.104(2)(d)(1) (allowing for transfer of "guardianship and custody of the child to a suitable person"). No evidence was offered concerning whether a guardianship was feasible, though the record discloses that the relationship between the mother and her parents is somewhat strained. Regardless, "a guardianship is not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 477 (citation omitted). These children are young, and a guardianship would not promote stability or provide permanency to these children's lives. *See In re R.S.R.*, No. 10-1858, 2011 WL 441680, at *4 (Iowa Ct. App. Feb. 9, 2011) ("So long as a parent's rights remain intact, the parent can challenge the guardianship and seek return of the child to the parent's custody."). Termination of the mother's parental rights will. *See A.S.*, 906 N.W.2d at 478.

## III. Conclusion

We affirm the termination of the mother's parental rights.

**AFFIRMED.**